SYLVIA SANDFIELD, Respondent-Appellant, v. LOUIS GOLDSTEIN et al., Appellants-Respondents.

Third Department, March 2, 1970.

*Maider, Smith & Maider* (*Lydon F. Maider, Hugh H. Smith* and *Robert L. Maider* of counsel), for respondent-appellant.

*Ernest Abdella* for appellants-respondents.

GREENBLOTT, J. These are cross appeals from judgments of the Supreme Court, entered in Fulton County on July 17, 1967 and February 20, 1968, upon decisions of a Referee awarding plaintiff Sylvia Sandfield a total of $26,895.75, together with costs and interest from the date of each judgment. The Referee assessed damages against defendant Goldstein upon findings that he had under-reported box office revenues, drawn excessive compensation, and made improper payments of corporate funds for repairs, maintenance and advertising. Defendant Goldstein was enjoined from sale of the corporate property and acting as manager and director of defendant corporation.

Plaintiff is a minority stockholder in the Thruway Outdoor Theatre Corp., a closely held corporation, owned by four shareholders, including defendant Goldstein who owns 50% of the common stock. This derivative action was commenced to compel defendant to return to the corporation moneys which he is alleged to have improperly disbursed and received, and to enjoin defendant from selling the Thruway Outdoor Theatre Corp. for $16,000.

In 1950, the defendant Louis Goldstein, who was experienced in the theatre business, joined with his brothers, and two others, one of whom was plaintiff's deceased husband, in the construction and operation of a drive-in theatre in the Rome, New York area. The defendant operated the theatre on behalf of the group and acted as its managing agent.

From its inception to the present time, the theatre has operated with varying degrees of success. It showed a profit in 1951, 1953–1959 and 1966. Until 1959, all officers, including the plaintiff, were paid a salary, although the defendant Goldstein was the only officer who, in fact, ever rendered any services.

In 1960, the theatre encountered financial difficulties. While the plaintiff blames the corporation's woes on defendant Goldstein, there was a sharp decline in the general economic conditions of the Rome area, due to the cut-down at Griffis Air Force Base. The corporation received an offer from defendant's brother-in-law to purchase the theatre for $16,000. On November 25, 1960, at a stockholders' meeting, over plaintiff's dissent, the offer was accepted.

Plaintiff then brought this derivative action on behalf of herself, all similarly situated stockholders (of which there were none) and the corporation against the defendant. The complaint demanded an accounting, payment by the defendant to the corporation of all damages caused by his misapplication of corporate assets, an order enjoining the sale of the theatre and the appointment of a receiver.

Initially it must be observed that the injunctive relief granted by the Referee was improper and therefore both injunctions must be vacated. Plaintiff as a shareholder dissenting from an authorized sale of corporate assets, may elect either to acquiesce in such sale or to bring an appraisal action whereby she would be entitled to receive the fair value of her holdings. (*Matter of Willcox* v. *Stern,* 18 N Y 2d 195; *Anderson* v. *International Mins. & Chem. Corp.,* 295 N. Y. 343; see Stock Corporation Law, § 20.)

She may not, however, attack the sale price as inadequate and remain in the corporation to share any benefits which might accrue from such sale (*Beloff* v. *Consolidated Edison Co. of N. Y.,* 300 N. Y. 11).

It is fundamental that " ' an injunction does not issue    *    *    * as punishment    *    *    *. (*Iron Molders' Union* v. *Allis-Chalmers Co.,* 166 Fed. Rep. 45, 49    *    *    *.) Its only legitimate end is protection for the future.' " (*J. H. & S. Theatres* v. *Fay,* 260 N. Y. 315, 320–321.) Thus it is clear that it was improper to enjoin defendant Goldstein from further participation in defendant corporation, whether as manager or director. The corpora-

tion is in receivership and there is no fear that the defendant Goldstein will reduce the corporate assets. Additionally, since he is a 50% owner of the corporation, that portion of the judgment will inure to his benefit. Another reason for vacating the injunction is that the corporation is suffering badly as a result of this protracted litigation.

We pass to a consideration of the award of damages in the amount of $20,705.51. In assessing damages, the Referee calculated that for the years 1956–1967, the defendant had received $140,705.51 from the corporation for salary, booking fees, telephone, automobile and travel expenses. Finding an average value of these services to be worth only $10,000 per year, he determined that the defendant should repay the corporation $20,705.51.

The amount of compensation to be paid corporate officers is properly a matter for the business judgment of the board of directors. Their judgment in this respect is final and subject to interference by the court only " in cases of clear abuse  *  *  * bad faith or in fraud  *  *  *  for the benefit of the corporation " (*Garbarino* v. *Utica Uniform Co.*, 269 App. Div. 622, 626–627, affd. 295 N. Y. 794). The Referee, while acknowledging the existence of this rule, found, however, that there was " no evidence that the directors had any knowledge of or information concerning the business and it is clear that the defendant Goldstein was in sole command and failed to disclose on the record, at least, facts sufficient to justify actions taken by the directors."

This statement is not supported by the evidence. The board passed a resolution in 1959 for the payment to Mid-State Theatre Service, a booking agency operated by the defendant, of 10% of all theatre income for booking, together with $7,800 for management and $1,500 for expenses. The minute book indicates that all the directors voted in favor of the resolution. The plaintiff introduced no evidence that the directors were ignorant of the operation of the business. While it is true that the board is composed of the defendant and his family, each had a financial interest in the corporation and it cannot be presumed that they decided to make defendant a gift of the corporate profits.

An examination of the complaint and the testimony reveals merely a difference of opinion between a stockholder and directors as to the value of an employee's services. We have searched the record in vain to find any evidence of fraud or " ' conduct so manifestly oppressive as to be equivalent to fraud.' (CARDOZO, J., writing in *Holmes* v. *Saint Joseph Lead Co.*, 84 Misc. 278, 283, affd. on opinion below, 163 App. Div. 885; see, also, *Burden* v. *Burden,* 159 N. Y. 287, 307, 308; *Leslie* v. *Lorillard,* 110 N. Y. 519,

532, 536; *Pollitz* v. *Wabash R. R. Co.,* 207 N. Y. 113, 124)."
(*Kalmanash* v. *Smith,* 291 N. Y. 142, 155.)

It is natural that reasonable men will differ as to the value of one's services. In view of the duties and responsibility reposed in defendant Goldstein for the operation of the drive-in theatre, we cannot see any basis for the decision of the Referee that the resolution authorizing payments to the defendant was made fraudulently or in bad faith. We note also, that for several years, the defendant did not draw the authorized booking fees and salary.

The record reveals that Goldstein drew sums for telephone and automobile expenses in excess of the $1,500 per year which was authorized by the 1959 directors' resolution. From 1959–1967, he drew $27,104.15, $9,104.15 more than authorized. Accordingly, the award of damages in the amount of $20,705.51 must be modified to $9,104.15.

Plaintiff introduced evidence alleging that defendant had withheld and failed to report all box office receipts. She contends that he had supplied misleading figures as to the number of patrons who had attended the theatre during 1959 and 1961. In support of her contention, she retained persons to count cars at the theatre in an attempt to estimate the number of patrons. Although the Referee did not accept her mathematical computation on the ground that to do so would be "unconscionable and contrary to all laws of justice and reason particularly since he (the defendant) unquestionably for many years rendered valuable service to the corporation", he nevertheless directed the defendant to repay to the corporation for 155 admissions in 1959 and for 1125 admissions in 1961 "as per actual count at $.80 per patron for a total of $1,024.00."

The evidence concerning such counts was unreliable and not entitled to probative weight. The sole witness upon whose testimony the 1959 portion of the award was based, testified that it was actually impossible to make an accurate determination of the number of patrons present. Concerning the 1961 count, it was established on cross-examination that the witnesses' estimates were based on guesswork and that an undetermined number of patrons were counted twice. Furthermore, the counts included unoccupied cars apparently owned by nonpaying employees. There was no evidence whatsoever that defendant conspired with any of the ticket sellers to conceal the number of patrons admitted. Moreover, defendant had no control whatsoever over concession revenues, since the concession was rented out to a third party and plaintiff made no claim that Thruway was deprived of its fair share of concession income.

The Referee further found that defendant had expended corporate funds for advertising which jointly benefited Thruway and another theatre owned by defendant. He therefore awarded $2,881.32 in damages representing the amount of advertising which benefited defendant's other theatre. The proportion of total expenditures properly attributable to defendant's other theatre and the issue of whether it had made partial reimbursement to Thruway were questions of fact for the Referee and since his determination has ample support in the record, we affirm this portion of the award.

We see no logical basis for the award of damages of $1,997.82 for sums paid out by defendant for repairs and maintenance, which the Referee deemed to be in excess of their reasonable cost. The Referee found that $2,500 per year was a reasonable cost of repairs and maintenance and assessed the defendant for the difference between that sum and the total sum expended over the period involved. In order to justify a finding that a corporate officer expended an unreasonable sum for repairs and maintenance, it must be shown that he acted in bad faith or imprudently. Such evidence is lacking in the record. There was no testimony to the effect that defendant personally received these payments, nor was there any testimony as to the work involved in the repairs and maintenance. The Referee also failed to consider that a portion of the repairs and maintenance expense covered the cost of enlarging the capacity of the theatre, which should have been charged as a capital improvement.

Plaintiff's contentions that the salaries and wages paid to employees of the theatre were unreasonable are likewise without merit. Similarly, we find no basis for disturbing the Referee's findings that sums expended for office rental and miscellaneous expenses were reasonable.

Plaintiff contends that interest should have been awarded. CPLR 5001 (subd. [a]) provides that interest in an equitable action shall be computed in the court's discretion. (See 5 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 5001.06.) We see no reason to interfere with the Referee's determination. The next alleged error is the Referee's failure to require defendant to refund the $5,000 paid him by the corporation for counsel fees in defending this action. This was error since section 64 of the General Corporation Law, then in effect, and the present section 722 of the Business Corporation Law specifically provide that there be no award for counsel fees to an officer or director who is sued in a derivative action and adjudged liable for breach of duty. Moreover, the general provision for counsel fees to the defendant in this type of action is strictly construed as an excep-

tion to the rule that each party pays his own attorney (*Diamond v. Diamond,* 307 N. Y. 263). Nor did the services of defendant's counsel benefit the corporation. Thus, defendant should refund the $2,000 paid on October 22, 1964 and the $3,000 paid on March 27, 1967.

The Referee allowed plaintiff counsel fees and disbursements of $10,000. In view of the fact that we have substantially reduced the award to the plaintiff, we accordingly reduce the award for counsel fees to her attorneys and award $4,000 to her attorneys and disbursements in the sum of $386.88. We allow the sum of $750 to Leonard Rosenthal and $1,250 to George J. Dorfman.

The judgment entered July 17, 1967 should be modified, on the law and the facts, so as to vacate the injunction permanently restraining defendants, Thruway Outdoor Theatre Corp. and Louis Goldstein, from selling or transferring any of the real and personal property of said corporation and the individual defendant from acting as manager of said corporation, and so as to reduce the damages awarded to $10,694.27. Judgment entered February 20, 1968 should be modified, on the law and the facts, so as to reduce the award of damages to $1,291; the award of legal fees to Maider, Smith & Maider, Esqs., to $4,000 for legal services and $386.88 for disbursements, to be paid by the corporation; the award to Leonard Rosenthal, Esq., to $750 and the award to George J. Dorfman to $1,250. As so modified, the judgments should be affirmed, with one bill of costs to defendants-respondents.

HERLIHY, P. J., STALEY, JR., COOKE and SWEENEY, JJ., concur.

Judgment entered July 17, 1967 modified, on the law and the facts, so as to vacate the injunction permanently restraining defendants, Thruway Outdoor Theatre Corp. and Louis Goldstein, from selling or transferring any of the real and personal property of said corporation and the individual defendant from acting as manager of said corporation, and so as to reduce the damages awarded to $10,694.27. Judgment entered February 20, 1968 modified, on the law and the facts, so as to reduce the award of damages to $1,291; the award of legal fees to Maider, Smith & Maider, Esqs. to $4,000 for legal services and $386.88 for disbursements, to be paid by the corporation; the award to Leonard Rosenthal, Esq., to $750 and the award to George J. Dorfman to $1,250. As so modified, judgments affirmed, with one bill of costs to defendants-respondents.