**David Lynn KERN, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–74–9.**

Court of Criminal Appeals of Oklahoma.

May 13, 1974.

Rehearing Denied June 3, 1974.

Don Hamilton and Jon L. Hester, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Robert McDonald, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Presiding Judge:

The appellant, David Lynn Kern, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Oklahoma County, Oklahoma, for the crime of Burglary in the Second Degree. Punishment was assessed at two (2) years in the state penitentiary. At the time of the commission of the act complained of, the defendant was a juvenile, being 17 years of age, and was certified for criminal prosecution as an adult by the Juvenile Division of the District Court of Oklahoma County. From said judgment and sentence upon trial the defendant has perfected a timely appeal.

The evidence adduced at trial is essentially as follows: Mr. and Mrs. Joseph Falgout left their home in Oklahoma City on June 23, 1972, to go on a two week vacation. When they left, their home was locked and they had given no one other than their married daughter permission to enter while they were away. They returned on the evening of the 7th of July to find that their home had been broken into, entry having been gained through a rear bedroom window. The home had been ransacked in an apparent effort to find valuables. In the family room a shotgun had been discharged into a bookcase.

Mrs. Falgout testified that two rifles, coins from a family collection and other items were missing. A few days later a police officer brought some coins by for the Falgouts to inspect. After the coins had been identified as theirs, they were left with the Falgouts for approximately eleven days. When the coins were returned to the police, they were each marked for identification purposes. Mrs. Falgout further testified that she knew the defendant as he had lived next door for almost four years prior to the house becoming vacant sometime in February of 1972. He never had permission to enter her home for any reason. John Falgout then took the stand and corroborated his wife's testimony.

Patricia Ann Scheer, the Falgouts' married daughter, then testified that she checked her parents' home on several occasions during their absence and found it to be in good order, her last visit being on the 1st day of July. She further testified

that she did not give the defendant permission to enter the home.

Officer Steven Young of the Oklahoma City Police Department then testified that he went to the Falgout home on the 7th of July in response to a burglary report, and that it was his opinion that the home had been entered through a bedroom window.

Officer David Holmes then testified that at approximately 1:00 a.m. on the morning of July 3rd he had occasion to arrest the defendant and one Patrick Paul. During the booking process it was noted that the defendant had in his possession an unusual number of coins.

Officer Jerry Koester testified that he took part in the booking process and noticed that the defendant had in his possession a large number of coins that appeared to be rare or from a collection. The coins were itemized and held subject to checking burglary reports should they be stolen. After the officer was advised of the Falgout burglary, he took the coins to the Falgout home where they identified the coins as being theirs. The coins were released to the Falgouts but were subsequently retrieved to be preserved as evidence. The officer then identified State's Exhibit 3 as an envelope containing said coins.

Mrs. Falgout was then recalled and positively identified the coins as being those taken from her home, calling particular attention to a certain silver dollar which had a unique identifying mark on it. The coins were then admitted into evidence.

Officer Troy Withey then testified that on the 5th day of July he was taken to the Falgout home by one Bryce Baggett, Jr., who had committed several burglaries and was taking the officer around to different houses pointing out the ones that had been entered and burglarized. The officer observed that the Falgout home had a back window broken out, there were bullet holes in the wall and the house had been ransacked. The officer subsequently took a shotgun and a rifle from Baggett, and the weapons were identified by Mr. Falgout as being his.

The State then called Patrick Paul who testified that he was 16 years of age at the time of the burglary and had been a participant in same. He stated that on the 2nd day of July the defendant came by his house at approximately 1:00 p.m., and they subsequently picked up Bryce Baggett, Jr. The defendant suggested that they go to his stepfather's home which was vacant. When they arrived, they entered the home without permission and the defendant then stated that the next door neighbors were out of town. The three agreed to "go hit" Falgouts' home. They went to the Falgouts' back yard, broke a back window and unlocked it. Paul entered the house through the window and let the others in through a side door. The three began looking for valuables, ransacking the home in the process. Baggett found a shotgun which he fired into a wall. Paul stated he never saw the defendant take anything although he was not with the defendant at all times. The three boys shortly left through a back door, Baggett and Paul taking a shotgun and a rifle with them. The three went in a roundabout way to Kern's car and proceeded to take the guns to Baggett's home. Paul knew of no other items taken from the home. The State then rested.

After demurring to the State's evidence, the defendant called Becky Hyde who testified that she saw the defendant, Paul and Baggett together on the 2nd of July and that Kern was wearing a certain bathing suit which she identified in court. The bathing suit did not match the description testified to earlier by Paul. On cross-examination the witness stated that she could not "say for sure" whether she had made a statement to a police officer that the defendant had a lot more money on him than she was accustomed to seeing in his possession. The defendant then rested.

On rebuttal the State recalled David Holmes who testified that the bathing suit, defendant's Exhibit A, identified in court by Becky Hyde was not the bathing suit

worn by the defendant when he was arrested and the coins found.

The State then called Ruth Paul, mother of Patrick Paul, who testified that she saw the defendant on the 2nd day of July, 1972 and that he was wearing a bathing suit other than defendant's Exhibit A and that it had a pocket on the front similar to that described by the officer.

The defendant's first proposition in error urges essentially that the Juvenile Court abused its discretion in certifying the defendant to stand trial as an adult as the specific findings made by the Juvenile Court supporting said certification were not supported by the evidence. The Court's findings of fact supporting certification are as follows, to-wit:

"1. Burglary is a relatively serious offense.

2. These crimes were committed in a wilful premeditated manner with a violence seldom seen in crimes against property.

3. Although they are crimes against property rather than persons, the violence in one case indicated an intent to psychologically harm someone.

4. That there is [sic] prosecutive merits to these complaints in that a committing magistrate would find from the evidence that the crimes were committed and there is probable cause to hold David Lynn Kern to answer for these crimes.

5. That David Lynn Kern is of at least average sophistication and maturity for his age and that evidence indicates he is above average in his ability to lead others.

6. That although he has little or no prior record with juvenile authorities, he is presently on a two-year deferred sentence from the Criminal Division of the District Court as an adult.

7. That reasonable likelihood of rehabilitation by means available to the juvenile process as opposed to need for protection of the public are very slim."

The defendant argues that the only evidence presented by the State going to the merits of the unlawful act charged was the inherently unreliable testimony of the accomplice, Patrick Paul. However, the Juvenile Court found that there was prosecutive merit to the complaint. Said finding is consistent with the guidelines suggested by the United States Supreme Court in Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84. Title 10, § 1111, of the Oklahoma Statutes requires that a juvenile hearing be conducted in an informal manner, according to the rules of evidence. This Court agrees that 22 O.S. § 742 requires the corroboration of an accomplice before a conviction can stand. However, this is not a rule of evidence since rules of evidence determine what facts are or are not admissible. Schulgasser v. Young, 25 Misc.2d 788, 206 N.Y.S.2d 81. The testimony of an accomplice is certainly admissible. Therefore, it is the opinion of this Court that a juvenile may be certified over as an adult upon the uncorroborated testimony of an accomplice provided that the other guidelines set out in *Kent,* supra, and Sherfield v. State, Okl.Cr., 511 P.2d 598, are followed. Any person so certified is still fully protected by the terms of 22 O.S. § 742 during the trial upon the merits.

An examination of the records of the juvenile proceedings reflects that the defendant was not submitted to a summary, arbitrary or prejudicial hearing. The defendant was represented by counsel and witnesses were subjected to cross-examination. The Juvenile Court made sufficient findings of fact reciting the reasons for his order certifying the defendant as an adult. The Court had before it a psychiatric report on said defendant prepared specifically for said hearing, and the defendant was present in Court for the juvenile judge to observe. Therefore, this Court on review cannot state that the Juvenile Court abused

its discretion in certifying that the defendant was capable of distinguishing right from wrong and should be held accountable for his actions in the Criminal Division of the District Court on the complaint charged.

■ The defense next urges that the Juvenile Court erred in certifying the defendant for the reason that the defendant did not have the mentality of an adult and was, in fact, at the time of the alleged offense judicially declared to be legally incompetent. The record reflects that the defendant on the 7th day of January, 1972, had been ordered admitted as a private patient to St. Anthony's Hospital in Oklahoma City pursuant to an order of an appropriate Court after a finding that the defendant was mentally ill. On the 1st day of September, 1972, the defendant's competency was restored. Therefore, competency had been restored prior to the certification hearing but after the alleged unlawful act. The juvenile judge was cognizant of the record and after a full investigation and juvenile preliminary hearing found the defendant capable of knowing right from wrong. Again, this Court cannot say that the Juvenile Court abused its discretion in so finding. It should be noted that during the trial the defendant could have raised the defense of insanity. The defendant raised no such defense.

■ At this point it might be pointed out that after the juvenile "preliminary hearing" wherein the defendant was certified to stand trial as an adult, the defendant was immediately arraigned in the District Court. No preliminary examination before a magistrate was ever held in this case. However, the error was waived when the defendant entered his plea of not guilty at the arraignment and subsequently went to trial. See Martin v. State, Okl. Cr., 463 P.2d 995, wherein this Court citing Blake v. State, Okl.Cr., 375 P.2d 270, held as follows:

"Where a defendant voluntarily enters a plea of guilty, or enters a plea of not guilty, and goes to trial, he will be deemed to have waived any right he may have had to question the fact that he did not have a preliminary examination, or that the transcript filed by the committing magistrate in the district court is insufficient.

"If the defendant upon arraignment pleads to the merits and enters on the trial, he waives the right to preliminary examination, or, if one was held, any irregularities therein."

■ Proper procedure requires that once a juvenile has been certified to stand trial as an adult, he must be taken immediately before a magistrate as in all cases. It is then incumbent upon the magistrate to hold a preliminary examination and, if sufficient evidence is presented by the State, to bind the defendant over for arraignment and trial in the District Court. However, in the instant case, as the irregularity has been waived as set out above, the issue is moot. For a discussion of the difference between a preliminary hearing in juvenile matters required under Title 10 and a preliminary examination before a magistrate required by Title 22, see Dorsey v. State, Okl.Cr., 503 P.2d 1305.

■ The defendant next contends that the coins allegedly taken from the person of the defendant were erroneously admitted into evidence as no proper chain of custody was established. With this contention we do not agree. The record reflects that once the coins were found on the person of the defendant they were taken to the Falgout home and identified by Mr. and Mrs. Falgout. They were retained by the prosecuting witnesses for approximately eleven days, then marked and returned to the police who kept them until trial. We find this to adequately establish the chain of custody of the coins. At trial the coins were positively identified by the prosecuting witnesses and properly admitted into evidence. See Gouard v. State, Okl.Cr., 335 P.2d 920, wherein this Court held as follows:

"Before physical object allegedly taken in commission of burglary is admitted in

evidence, it must be sufficiently connected with the crime itself by proper identification. However, it is not necessary that such identification should positively and indisputably describe such article. If it is sufficiently described to justify its admission in evidence, the lack of positive identification goes to the weight of such evidence rather than its admissibility."

Therefore, defendant's proposition in error is meritless.

■ The defendant next urges that the trial court should have sustained defendant's special demurrer to the evidence for the reason that the State failed to corroborate the testimony of the accomplice, Patrick Paul. We do not agree. The State presented testimony showing that the defendant on the night of July 3, 1972, had on his person numerous coins which belonged to the Falgouts. This certainly tended to connect the defendant with the commission of the crime charged.

The defendant next contends that the trial court's instructions concerning accomplice testimony were not sufficient. The instructions complained of are as follows:

"NO. 5

As to the witness Patrick Paul you are instructed that you are to determine from these instructions whether or not he is an accomplice to the crime of which the defendant here stands charged, and if you determine that he is an accomplice, then, you are instructed that you cannot convict the defendant upon the testimony of said witness, unless you find that such testimony is corroborated as provided in these instructions.

"NO. 6.

An 'accomplice' is one who, with criminal intent, is concerned with others in the commission of a crime, either by being present participating in it, or not being present, by aiding and abetting it, or by having advised and encouraged its commission, though not present when it is committed.

"A conviction cannot be had on the testimony of an accomplice unless the testimony of such witness be corroborated by other evidence."

"Evidence corroborative of an accomplice need not directly connect the defendant with the commission of the crime. It is sufficient if it tends to connect the defendant with its commission. This corroborating evidence, however, must show more than the mere commission of the offense or the circumstances thereof. Such evidence need not be direct, but may be circumstantial evidence only.

"It is not essential that the corroborating evidence, if any, shall cover every material point testified to by the accomplice, or be sufficient standing alone, to establish the fact of the commission of the crime charged. It is sufficient corroboration if the jury, in their discretion, find from the evidence beyond a reasonable doubt under the law, that the testimony of the accomplice is corroborated as to some material fact or facts by independent evidence tending to connect the defendant with the commission of the crime. If any accomplice is so corroborated, you may from that infer that the accomplice speaks the truth, and you shall give said testimony such weight and credit as you find the same is entitled to receive."

■ In support of his proposition the defendant cites People v. Gordon, 110 Cal. Rptr. 906, 516 P.2d 298, for the proposition that the jury must be admonished so that it will not accept the words of an accomplice at face value, with any presumption of truthfulness and candor, or upon the same standard as that applied to other witnesses. However, an examination of the instructions reflects that the Court properly instructed the jury according to Oklahoma law. The defendant offered no requested

instructions on the law of accomplices although he had ample opportunity to do so. Therefore, he did not reserve the issue for appeal. Gresham v. State, Okl.Cr., 456 P. 2d 119.

 The defendant's last proposition urges that the trial court committed reversible error in permitting prejudicial argument by the prosecuting attorney over obligation of the defendant. We do not agree. The defendant failed to object to the first complained of statement. The law is well established that where defense counsel believes there has been improper argument, timely objection should be made together with a request that the jury be admonished. Disheroon v. State, Okl.Cr., 357 P. 2d 236.

 The record reflects that after the prosecuting attorney *completed* her closing argument, defense counsel requested that the jury be admonished to disregard certain statments and moved for a mistrial. No objection was made at the time of the alleged prejudicial statements. Therefore, the issue was raised too late.

 It is further noted that before a complained of remark constitutes reversible error it must be flagrant and prejudicial. In light of the minimum sentence assessed by the jury and the evidence presented at trial, we do not believe this to be the case. Defendant's last proposition is without merit.

For the reasons set out above it is the opinion of this Court that the judgment and sentence appealed from be and the same is hereby affirmed.

BUSSEY, J., concurs.

BRETT, Judge (specially concurs):

After a careful examination of the entire record in this case, I concur herein. However, insofar as another year has passed since the defendant stood trial and was sentenced, defense counsel may want to consider the provisions of 22 O.S.1971, §

994, for further consideration of the trial court. This, of course, presupposes defendant is in a position to make a positive demonstration toward rehabilitation.