Thomas Leon **HARRIS** and Floyd Carver Harris, Appellants,

v.

The **STATE** of Oklahoma, Appellee.

No. F–76–489.

Court of Criminal Appeals of Oklahoma.

Jan. 17, 1977.

Leslie R. Earl, Public Defender of Tulsa County, Tulsa, for appellants.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Thomas Leon Harris and Floyd Carver Harris, hereinafter referred to as defendant Thomas Harris and defendant Floyd Harris, were charged, tried and convicted in the District Court, Tulsa County, Case No. CRF–73–227, for the offense of Murder, in violation of 21 O.S.1971, § 701. Their punishments were fixed at terms of life imprisonment. Defendants were granted post-conviction relief and new judgments and sentences were entered, from which this appeal has been perfected.

At the trial, J. Michael Williams, testified that in the early morning hours of July 21, 1971, he was proceeding home from work in the 4600 block of North Lewis. He observed a car parked west of a Quick-Trip Store, with the lights out and the motor running. He observed a black male walking from the store. The car was an older model, white Plymouth.

Officer Robert Maras testified that he was dispatched to a Quick-Trip Store on North Lewis at approximately 3:26 a. m. on July 21, 1971. He entered the store and observed the cash register on its side and money and cigarettes strewn on the floor. He proceeding to the rear of the store and observed a man lying on his back with a small hole in the center of his forehead.

John R. Scott testified that he was the district supervisor of the Quick-Trip Stores in Tulsa on July 21, 1971; that in the early morning hours he was summoned to the Quick-Trip Store located in the 4600 block of North Lewis. The store area around the check stand was "messy" with cigarettes and change laying on the floor. He testified that neither defendant Thomas Harris, nor defendant Floyd Harris were employed by the Quick-Trip Corporation.

Stephen Tolley testified that he was with Mike Williams on the morning in question. He observed a light-colored car in the store parking lot and a black male walking towards the store.

Deborah Avance testified that defendant Thomas Harris, defendant Floyd Harris,

Mike Booker and Reginald Henderson came to her residence in the early morning hours of July 21, 1971. She overheard a conversation between the defendants and her husband, Reginald Avance, concerning robbing a store. The defendants, Reginald Henderson and Michael Booker left, taking with them a gun belonging to her husband. They returned at approximately 3:30 a. m. Defendant Floyd Harris said they had robbed the store and had to shoot the man to keep him from identifying them. Defendant Thomas Harris said that he turned the cash register over trying to get the money out and it spilled all over the floor. She had a further conversation with defendant Floyd Harris four months later wherein he stated that he was worried and that the only way the police would find out was if one of them told. She assured him that she would not inform the police. On cross-examination, she admitted to convictions for Tampering with the United States Mail and that she was aware of a reward which had been offered in connection with the case.

Officer Roy Goodenough testified that he was assigned to the Identification Division of the Tulsa Police Department. He was qualified as an expert in the recovery of latent fingerprints. He identified State's Exhibit No. 12 as fingerprints he removed from the cash register in the Quick-Trip Store on the morning in question.

Officer Roy Nuttall testified that he was qualified as an expert in the field in comparing fingerprints and that in his opinion, one of the prints on State's Exhibit No. 12 was made by the left thumb of defendant Thomas Harris.

Reginald Avance testified that he was currently an inmate of the Oklahoma State Penitentiary, serving sentences for Robbery, Burglary and Forgery. On the evening of July 20, 1971, he had a conversation with the defendants, Michael Booker and Reginald Henderson at his wife's home. Defendant Thomas Harris said he knew a Quick-Trip Store that kept quite a bit of money. Defendant Floyd Harris had a .22 caliber revolver that he had borrowed from

Avance. They left at approximately 1:45 a. m. in Booker's white Plymouth. They returned in approximately an hour and got him out of bed. The defendants started counting the money. Defendant Floyd Harris stated that they went to the store and robbed it; that he shot "the dude" because "I didn't want no witnesses to come down and testify on me." [Tr. 457]

Dr. Leo Lowbeer testified that he performed an autopsy on the body of Ronald Baker. In his opinion, the cause of death was a perforation of the brain by a small caliber bullet.

Michael Booker testified that he was at the Avance residence on July 21, 1971 with the defendants, Reginald Henderson and Willie Horn. He went to a Quick-Trip Store at 46th and Lewis with the defendants and Reginald Henderson. The defendants went into the store and returned approximately ten minutes later. Defendant Floyd Harris said that he had to "shoot the dude." [Tr. 511] They returned to the Avance house and stayed until 7:30 a. m. He testified that he was presently incarcerated in the Tulsa County Jail charged with the murder and robbery.

Reginald Henderson testified that he was with the defendants and Mike Booker on the morning in question. His testimony did not differ substantially from the testimony of Booker.

For the defense, Charles Corey, Jr. testified that he went to the Quick-Trip Store at approximately 3:30 a. m. He did not observe any cars in the area and the attendant was the only person in the store.

Caroline Harvey testified that she attended a party with defendant Thomas Harris in the latter part of July, 1971; that he arrived at the party between 9:00 and 10:00 p. m. and did not leave until the following morning.

Helen Louise Abraham testified that she attended a birthday party some time after July 19, 1971. Defendant Thomas Harris arrived at approximately 8:00 p. m. and was still in attendance the following morning.

Defendant Thomas Harris testified that he attended a birthday party for Louise Abraham on July 20, 1971. He stayed at the party until 5:00 the following morning. He denied being at the Avance house in the early morning hours of July 21st. He admitted convictions for Second Degree Burglary, Grand Larceny and Assault and Battery. He denied ever being in the Quick-Trip Store at 4604 North Lewis.

Defendant Floyd Harris testified that he was presently serving a sentence for Possession of Stolen Securities. He denied being in the Quick-Trip Store on the morning of July 21, 1971. He further denied making any statements to the contrary to the Avances, Mike Booker, or Reginald Henderson.

■ Defendant Floyd Harris contends, in the first assignment of error, that his trial and conviction for felony Murder violates his right not to be twice placed in jeopardy in that he was previously tried, convicted and sentenced on the charge of Robbery with Firearms which case involved identical evidence as presented in this case. We need only observe that this contention was reviewed by this Court in *Harris v. State*, Okl.Cr., 555 P.2d 76 (1976), wherein we stated:

"An examination of similar cases from our sister states fortifies our holding that an individual may be separately prosecuted and convicted for felony murder and the underlying felony which is the basis for the felony murder. Particularly persuasive is the New York decision as our homicide murder statute was patterned after New York's homicide murder statute. See *Tarter v. State*, Okl.Cr., 359 P.2d 596 (1961), citing *Jewell v. Territory*, 4 Okl. 53, 43 P. 1075 (1896). A later expression on this area of law is made by the New York Court in *Sandfield v. Goldstein*, 33 A.D.2d 376, 308 N.Y.S.2d 25 (1970). In that case the defendant had been charged in one of four counts of the indictment for felony murder. The defendant made a motion to dismiss upon the basis that the indictment had not specifically charged the felony underlying

the murder, i. e., robbery. The court, citing with approval several cases including *Santangelo v. Tutuska* . . . [19 Misc.2d 308, 192 N.Y.S.2d 350, affirmed 11 A.D.2d 906, 205 N.Y.S.2d 1006] held that in a felony murder case the underlying felony is a substantial and generically separate and disconnected offense. The robbery is a distinct offense and is not part of the crime of homicide nor is it an included crime. The theory of law is that the intent to commit the underlying felony is transferred to the homicide even though the felon does not intend to cause the death of anyone.

"Therefore, in the instant case, the defendant's claim of former jeopardy cannot be sustained. The defendant's previous conviction of felony murder does not bar his subsequent prosecution and conviction for the underlying felony of robbery with firearms."

■ Defendants contend, in the second assignment of error, that the trial court erred in failing to sustain their motions for severance. Defendant Thomas Harris complains that the testimony of Deborah Avance to the effect that defendant Floyd Harris made the statements outside his presence several months later that he "had to shoot the dude" would not have been admissible, had he been tried separately. Defendant Floyd Harris argues that the testimony of Officers Goodenough and Nuttall concerning the fingerprint found at the scene belonging to defendant Thomas Harris would not have been admissible against him had he been granted a separate trial. We first observe that defendant Thomas Harris' contention falls within the rule enunciated by this Court in *Justice v. State*, Okl.Cr., 512 P.2d 1389 (1973), wherein we stated:

". . . Defendant cites as authority *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, wherein the United States Supreme Court held that it was prejudicial error to admit a co-defendant's confession that implicating [sic] defendant at a joint trial even though the trial court gave instructions that confes-

sion could only be used against co-defendant.

"Although we are of the opinion that the trial court should have granted a severance, but because of the overwhelming evidence of defendant's guilt that the same does not constitute fundamental error. In *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340, the court stated:

'Having concluded that petitioner's confession was considered by the jury, we must determine on the basis of "our own reading of the record and on what seems to us to have been the probable impact . . . on the minds of an average jury," *Harrington v. California*, supra, 395 U.S. 250, at 254, 89 S.Ct. 1726, at 1728, 23 L.Ed.2d 284, at 288, whether Snell's admissions were sufficiently prejudicial to petitioner so as to require reversal. In *Bruton,* the Court pointed out that "[a] defendant is entitled to a fair trial but not a perfect one." 391 U.S. at 135, 88 S.Ct. 1620, at 1627, 20 L.Ed.2d at 484, quoting *Lutwak v. United States*, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593, 604 (1953). Thus, unless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required. See *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710, 24 A.L.R.3d 1065 (1967). In this case, we conclude that the "minds of an average jury" would not have found the State's case significantly less persuasive had the testimony as to Snell's admission been excluded. The admission into evidence of these statements, therefore, was at most harmless error.' "

As in *Justice,* supra, we are of the opinion that the "minds of the average jury" would not have found the State's case "significantly less persuasive" as to defendant Thomas Harris, had the testimony of Deborah Avance as to co-defendant Floyd Harris' statement been excluded. Reginald Avance, Michael Booker, Reginald Henderson and Deborah Avance *all* testified as to similar statements made by defendants in each others' presence. We thus conclude that there is no reasonable possibility that the improperly admitted evidence contributed to defendant Thomas Harris' conviction.

We next observe that the testimony of Officers Goodenough and Nuttall concerning the fingerprint of defendant Thomas Harris would have been admissible against defendant Floyd Harris had a severance been granted. The defendants were charged acting together and in concert. We have previously held that where two or more persons have acted in concert in the commission of an offense, the acts of one co-actor in pursuance of the common design are admissible against another co-actor on trial for the offense. See, *Roberts v. State*, Okl.Cr., 523 P.2d 1104 (1974). We therefore find this assignment of error to be without merit.

Defendants assert, in the final assignment of error, that the trial court erred in not instructing the jury that Deborah Avance and Reginald Avance were accomplices under the law, and that the defendants could not be convicted upon their uncorroborated testimony. We need only observe that the evidence was conflicting as to whether the Avances were, in fact, accomplices. This Court, as early as 1924, held that where there is even slight conflict in the evidence as to whether a witness is an accomplice of the accused in the commission of a crime, the trial court is not required to give an instruction to the effect that such witness is an accomplice as a matter of law. See, *Highfill v. State*, 26 Okl.Cr. 420, 224 P. 729. We further observe that the trial court instructed the jury as to the law of accomplices and the necessity of corroboration. [O.R. 94] We therefore find the final assignment of error to be without merit.

In conclusion, we observe the record is free of any error which would cause reversal or justify modification. Under such circumstances, the judgment and sentence should be, and is accordingly *AFFIRMED.*

BRETT, P. J., dissents in part, and concurs in part.

BLISS, J., concurs.

BRETT, Presiding Judge, dissents in part, and concurs in part.

I concur that this conviction of Thomas Leon Harris for the offense of Murder should be affirmed. I dissent to his conviction for robbery with firearms, because he sustained this murder conviction prior to being placed on trial on the robbery charge. In the robbery charge I dissented because I believe he was twice placed in jeopardy insofar as the armed robbery charge was the premise for this murder charge.

Likewise, I feel compelled to dissent to this conviction of Floyd Carver Harris, because the State first convicted him for the same armed robbery charge. What I stated in my dissent to *Harris v. State*, Okl.Cr., 555 P.2d 76 (1976), is applicable to this conviction of Floyd Carver Harris.