STATE of Missouri, Respondent,

v.

Frederick J. MARTIN, Appellant.

No. KCD 27173.

Missouri Court of Appeals,
Kansas City District.

July 7, 1975.

Thomas J. Cox, Jr., Kansas City, for appellant.

John C. Danforth, Atty. Gen., Robert M. Sommers, Asst. Atty. Gen., Jefferson City, for respondent.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

Appeal from judgment of conviction and sentence of 25 years' imprisonment, imposed by court under Second Offender Act, after jury in Jackson County Circuit Court found Frederick J. Martin guilty of robbery, first degree.

At around 12:15 A.M., August 17, 1973, Paul Varsalona, general manager of Charlie's Liquors, and Harry Bell, an employee of the store, were preparing to close the store for the day. Varsalona had counted the money in the cash register, consisting of 58 one-dollar bills and a $5 bill. He put this money in a sack on a shelf below the register.

The appellant, Frederick J. Martin, entered the store and walked to the rack where cakes and potato chips were displayed, across an aisle from the cash register. Martin stood at the display for a few minutes, saying nothing and making no selection. Bell left the store sales room and went to the back room.

An unidentified man entered the store, with a gun in his right hand, and told Varsalona, "This is a hold up." The robber pulled his shirt over his face up to his nose and went behind the counter and put the gun at Varsalona's head. He asked Varsalona where the other man was and when Varsalona said he was in the back, the robber said, "Let's go get him." He walked Varsalona to the rear. Varsalona called for Bell and when Bell appeared the robber told the two to lie on the floor. The robber went through the pockets of the two men. A second unidentified man appeared and said to the robber, "Come on, man, you are taking a long time, let's get out of here."

The robber ordered Varsalona into the cooler, about twenty feet from the cash register. When he entered the cooler, Varsalona set off a silent alarm which notified police that a holdup was in progress.

The robber then put his gun at the back of Bell's head and "marched" him to the cash register. Martin was standing a few feet from the register, with a gun in his left hand. The other robber said, "You take over from here" and left the store. Martin told Bell to empty the cash register. He did so and placed the money in a sack and handed it to Martin. As he was handing the sack to Martin a boy entered the store. Three police officers who had converged on the scene in response to the alarm set off by Varsalona entered the store shortly after the boy's arrival.

The police officers saw Martin at the cash register with a paper sack in his right hand. The sack contained $58 in one-dollar bills and one $5 bill. The cash register was empty. Next to the cash register the officers found a loaded revolver. Varsalona was freed from the cooler and told the officers that Martin was involved in the holdup. The officers placed him under arrest. The boy was not held when Varsalona indicated he was not involved in the holdup.

In addition to the $63, some $1100 to $1200 in "money order" money was missing from the store. The police saw no one leave the store as they approached it.

At Martin's trial on a charge of robbery in the first degree with a deadly weapon, the state's evidence was the testimony of Varsalona, Bell and the police officers to substantially the above facts. Martin testified in his own behalf, and stated that he was in the store only as a customer and took no part in the robbery. He denied ever having the sack of money in his hand and any knowledge of the revolver found by the police. He said there were two robbers who left just as the boy entered and that he started to leave, but the police arrived and ordered him to remain. He admitted on cross-examination that he was

under the influence of heroin at the time in question.

A jury found Martin guilty of robbery in the first degree. The trial court, having found the Second Offender Act applicable, fixed his punishment at 25 years' imprisonment. After his motion for new trial was overruled, defendant was granted allocution and judgment entered in accordance with the verdict and the penalty assessed by the court.

The trial of the defendant was somewhat stormy, marked by frequent outbursts by the defendant, directed primarily at his appointed counsel and also the court. On this appeal, the first assignment of error, advanced by counsel appointed for the appeal after trial counsel requested to be relieved, is that the trial court erred in refusing appellant's request for a continuance to permit him to employ counsel of his own choosing.

The information was filed in the circuit court August 31, 1973. Mr. Paul Katz, an Assistant Public Defender, was appointed to represent the defendant. The date of his appointment does not appear, but he apparently represented Martin at the preliminary hearing and beginning in September had filed various motions in the circuit court on behalf of the defendant.

The case was set for trial November 14, 1973. A pretrial hearing was held to take up motions to suppress identification testimony and a statement by defendant to police. Defendant appeared with Mr. Katz. Mr. Gary Haggerty of the Public Defender office appeared with Katz to assist in the defense. Haggerty advised the court that the defendant "indicated just this morning that he desires to have us relieved as counsel * * *." The court permitted defendant to state his reasons for this request. He stated that he did not feel Katz was "putting forth his best effort to defend me." In a somewhat rambling discourse, with little specifics, the defendant advised the court that his studies in the law library and discussion of the case with "a few

dudes upstairs in the jail" led him to believe "there is a lot of things you should have got done that wasn't done." Katz advised the court that he had been to the scene of the crime, had interviewed Varsalona, and Staley, the boy who entered the store during the holdup; that he had perused the prosecution files and had all of the police reports; that he had seen the defendant on six to eight occasions and spent several hours with him and that he felt he was prepared to go forward with the trial and assist the defendant.

The court advised defendant that there was nothing which would justify the court in relieving defense counsel and ordered the trial to proceed. A hearing was held on the motion to suppress identification testimony and on the motion to suppress the statement to the police. Both motions were overruled. Voir dire of the jury panel was held and the jury selected.

At that stage of the proceedings, Mr. Haggerty advised the court that the defendant wanted to move for a continuance on the basis that he was employing a private attorney. The defendant stated:

"I was under the impression which I had been told in the counsel room by both of these attorneys that if I did hire a private attorney, it would be all right and I would like a private attorney because these two men are not trying to represent me and my wife went and talked with Mr. Anthony Renaldo and he has agreed to enter an appearance as my lawyer to handle this case for me. Now, the time it is going to take him to get here, I don't know, but I do not wish to go to Court with these two men because they are not representing me and I wish to hire a private attorney."

The court stated that the request was denied because it was too late.

On this appeal, appellant states his assignment of error as follows:

"THE REFUSAL OF THE TRIAL JUDGE TO GRANT A CONTINUANCE, WHERE NO PREVIOUS CONTINUANCE HAD BEEN GRANTED, FOR THE PURPOSE OF ALLOWING APPELLANT TO PROCURE EFFECTIVE COUNSEL WHERE HIS COUNSEL AT TRIAL WAS INEFFECTIVE, CONSTITUTED AN ABUSE OF DISCRETION."

His argument on this point combines the claim of error in failing to grant a continuance to permit the employment of private counsel with a complaint of ineffectiveness of appointed counsel. Inasmuch as the record before this court is inadequate to permit consideration of the question of inadequate assistance of counsel, that portion of the argument will be disregarded and the question of refusal of the continuance will be treated as the claim of error properly before this court. See State v. Hedrick, 499 S.W.2d 583, 586[8] (Mo.App.1973).

The appellant first voiced disapproval of the counsel appointed to defend him at the pretrial hearing on the date that the case was set for trial. The appellant asserted differences with appointed counsel about the action being taken in his behalf. The trial court found no substance to the differences and determined that appointed counsel was prepared and ready to try the case. No suggestion was made at that time that appellant sought or was able to procure counsel of his own choosing.

After the voir dire and selecting of the jury, a continuance was requested on the grounds that defendant through his wife had made arrangements with an attorney to represent him. The trial court overruled the request as untimely.

■ In these circumstances, no abuse of discretion on the part of the trial court appears. The trial court obviously considered the move of the defendant as an effort to delay the trial rather than a bona fide action on the part of defendant to employ counsel of his own. The alleged newly employed counsel did not appear and no assurance was given as to when he might do so. The trial court was not obliged at that stage of the proceedings to grant a continuance on the basis of the

defendant's statement. The request was directed to the court's discretion and the denial of the request was not error. See *State v. Jefferies,* 504 S.W.2d 6 (Mo.1974); *State v. Lahmann,* 460 S.W.2d 559 (Mo. 1970); *United States v. Leach,* 429 F.2d 956, 963[16, 17] (8th Cir. 1970), cert. den. 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 151 (1971).

Appellant would distinguish Jefferies and Lahmann because of the different facts in those cases. Generally each case involving this problem presents a distinctive factual situation. The determination must be made on the facts of each case as to whether the trial court's refusal of a continuance was an abuse of discretion. On the facts here, no abuse has been demonstrated.

Appellant's second assignment of error also relates to the trial court's refusal to grant a continunce or delay in order to permit the production of a defense witness.

The state closed its case around noon on the second day of the trial. Out of the presence of the jury, defense counsel interrogated the defendant about his wish to testify in his own behalf. In the course of the interrogation defendant stated that he wanted Staley, the boy who came into the store during the robbery, as his first witness. Defense counsel stated that he thought Staley could be produced in an hour and a half. When court resumed following the noon recess, Staley was not present. Defense counsel stated that an investigator for his office was attempting to locate the witness. The trial judge said that the case must proceed and defendant took the stand and testified.

At the conclusion of defendant's testimony, Staley had not appeared. Defense counsel stated that a subpoena had been served on Staley and that he was in court on the first day of the trial, but had been excused by defense counsel with the understanding that he would come to counsel's office the next morning. He failed to do so and counsel was of the opinion that the witness was hiding. The court agreed to recess the proceedings until the following morning in order to permit the production of the witness.

When court resumed the following morning, the witness was not present. An investigator for defense counsel's office testified to his efforts to locate the witness. The judge concluded that every effort had been made to locate the witness and that the witness was trying to avoid the investigator. Without further request from defense counsel, the court inquired whether the defense had anything further and counsel replied negatively.

■ The respondent questions whether or not appellant properly presented his request to the trial court for a continuance because of the absence of the witness. Defense counsel did advise the court that he objected to proceeding further without the presence of the witness. The adequacy of this move is questionable, but the assignment will not be disposed of on the procedural grounds. Clearly, the trial court was aware of the defense position.

This is, however, again a matter of discretion for the trial court. Numerous factors might be pointed to as justifying the trial court's ruling here, such as the untimeliness of the request (*State v. Martin,* 515 S.W.2d 802 (Mo.App.1974)), or the form of the request (Rule 25.08(b), V.A.M.R.). Most significant here, however, is the failure of the defense to show the importance of the witness's testimony. Mr. Katz did not want to call Staley as a defense witness. Either Katz or Haggerty had interviewed the witness, but no statement had been taken from him. At the most, they informed the court that the witness would testify that he did not see Martin pull his shirt over his face, as Bell testified he had done. According to counsel, the witness had told them that he paid little attention to the defendant and did not know whether he held a gun or a sack. He would have placed Martin at the cash register in Bell's presence.

In his brief in this court, appellant says that he does not know what Staley would

have said but that appellant is entitled to the benefit of the doubt.

On this record, the trial court cannot be said to have abused its discretion. Defense counsel who had interrogated the witness were not anxious for his testimony. The defendant who insisted on it stated that he did not know what the witness would say. The trial court granted one request for a brief delay to permit production of the witness. He was properly patient with defense efforts to produce Staley, but when the efforts were unsuccessful and no convincing showing had been made of what material contribution the defense expected from the witness, the trial court was not required to protract this case further. The trial court's action was a proper exercise of discretion.

Appellant next complains of the trial court's refusal to grant a mistrial based upon an occurrence involving a bailiff and defendant's wife and also an occurrence in which defendant struck his trial attorney.

On the first occasion, when the trial resumed on the second day following the noon recess, the trial court directed the bailiff to remove a woman spectator "the next time she says anything in the courtroom." After the defendant had been sworn as a witness and had given his name and age, the following appears in the transcript:

"(Whereupon, the following proceedings were had in the back of the courtroom between the Bailiff for Div. 3 and a woman spectator:)

"THE BAILIFF: You will have to keep quiet or leave.

"THE WOMAN: I don't have to leave, he ain't getting no justice here.

"THE BAILIFF: You will have to leave or keep still.

"THE WOMAN: You get your hands off me.

"(Whereupon, the defendant left the witness stand and went to the back of the courtroom and was stopped by the Deputy Sheriff.)

"THE WOMAN: He's not getting no justice, you white prejudice bastard.

"THE COURT: Mr. Carl, take her out of the courtroom. Mr. Sheriff, tell the defendant to come back to the witness stand.

"(Whereupon, the defendant was escorted back to the witness stand by the Deputy Sheriff.)

"(Counsel approached the bench and the following proceedings were had:)

"MR. KATZ: Your Honor, under these circumstances, we move for a mistrial, I believe it prejudicial the disruption of Mr. Carl, the Court Bailiff, and a Court spectator, I believe Mrs. Martin—

"(Proceedings returned to open Court.)

"MR. MARTIN: Yes, that's my wife, man, she's as tired as I am about how you all are messing over me and depriving me of all my rights down here in this courtroom.

"THE COURT: The request for mistrial is denied. I admonished the Bailiff to remove that person from the courtroom if she said anything further. She has been back there talking during this preliminary hearing out of the presence of the jury. Following the Court's direction, she was removed. Now proceed with the examination."

The second incident is described as follows:

"THE COURT: Members of the jury, we have heard all of the evidence in this case, there is nothing further and at this time, I am going to read to you the Instructions on the law, after which the attorneys will make their arguments.

"THE DEFENDANT: Your Honor—get up there, man—

"THE COURT: You have been given Instructions—

"THE DEFENDANT: The defense has a more evidence they would like to put it on, my lawyer don't want to put it on and I want—

"THE COURT: Will you gentlemen come up here please?

"(Counsel approached the bench and the following proceedings took place: The defendant arose from his chair and approached his attorney from behind and struck him in the back of his head. The Defendant was then subdued by the Deputy Sheriffs present in the courtroom.)

"THE COURT: Take him out of the courtroom. Members of the jury, please go up—

"THE DEFENDANT: What the (expletive omitted) is wrong with you?

"THE COURT: —to the jury room.

"THE DEFENDANT: You (expletive omitted) wants somebody to plead for something they ain't never did. I ain't pleading guilty for nothing. You're not going to defend nobody, you get off my case, man, I told you a thousand times, you prejudice, he prejudice and the judge is too.

"(The following proceedings were had OUT OF THE PRESENCE AND HEARING OF THE JURY, in the courtroom:)

"THE COURT: All right, now, wait before you take him out. Let the record show that the defendant has just struck his court appointed attorney—

"THE DEFENDANT: Because I want him off my case and put that in the record too and the Judge won't let him off because all of them are prejudice against me.

"THE BAILIFF: Will you shut up?

"THE COURT: Wait, Frank, let him talk. Now, Mr. Martin, I have advised you earlier your conduct was going to result in your removal from the courtroom if it continues—

"THE DEFENDANT: Have I prevented in any way—

"THE COURT: —and it has just resulted in that. You will be removed from the argument. Take him outside.

"THE DEFENDANT: Let me get my papers before I go, can I get that?

"THE COURT: Take him outside.

"(Whereupon, the defendant was excluded from the courtroom.)

"MR. KATZ: Your Honor, I would move for a mistrial based upon the actions of the defendant having at least a scintilla of doubt as to whether—I myself don't have any doubt as to whether I could defend the defendant in closing argument after the assault but for the record—the record may itself be jaded by this action of the defendant.

"THE COURT: Mr. Katz, the Court is very sorry that you are in the position you are in. I think, however, that the conduct that was just displayed was intentional and deliberate effort on the part of the defendant to provoke a mistrial. He was repeatedly admonished about his conduct during this trial and without any reason, he struck you in the back of the head. Now I recognize the difficult position you are in, but I am not going to grant a mistrial. I think this has been a sole effort of this defendant throughout this trial to provoke a mistrial and I think this was the last straw in his effort to do that. * * * "

■■ The trial court did not err in refusing to grant the request for a mistrial in either of these instances. Whether or not an outburst by a spectator or the defendant requires the drastic remedy of a mistrial is a matter for the trial court's discretion. *State v. Robertson,* 480 S.W.2d 845, 847[5, 6] (Mo.1972); *State v. Jackson,* 506 S.W.2d 424, 427–429[4] (Mo.1974). "The trial court is charged with maintaining orderly procedure in the courtroom, and it may properly exercise discretion in determining the steps necessary to maintain order." *State v. McGinnis,* 441 S.W.2d 715, 717[1] (Mo.1969). The trial court's action with regard to the instance involving defendant's wife was a proper exercise of such authority. With respect to the defendant's striking his attorney, the trial court properly declined to put a premium upon the defendant's misconduct by granting the mistrial which he was so

obviously seeking. *State v. McGinnis, supra.*

■ During the *voir dire* examination of jurors, defendant moved for a mistrial "based on the fact some of the jurors saw him in handcuffs when he was out in the hall." The court summarily denied the motion. Under the ruling of this court in *State v. Warriner,* 506 S.W.2d 103, 104[1] (Mo.App.1974), this action by the trial court was not erroneous.

■ Appellant next contends that the trial court erred in failing to sustain his motion to suppress the in-court identification testimony of Varsalona and Bell. Appellant acknowledges that he can point to no out-of-court identification procedures which might have influenced the identification testimony. More significantly in this case defendant's identification was hardly an issue. He was apprehended at the scene of the crime. Bell and Varsalona saw him during the robbery and when he was arrested. There was no question that defendant was the person arrested, the sole question being the extent of his participation in the robbery. The trial court did not err in overruling the motion.

■ Appellant claims that the 25-year sentence imposed upon him is excessive, in the light of the facts of the case, and constitutes an abuse of discretion. The offense for which defendant was convicted is punishable by imprisonment for not less than five years, with no maximum specified. § 560.135, RSMo 1969, V.A.M.S. His prior conviction of robbery in the first degree made the length of the sentence a matter for the court. The 25-year sentence is within the limits prescribed by § 560.135, and the claim of abuse of discretion is without merit. *State v. Grimm,* 461 S.W.2d 746, 754[7, 8] (Mo.1971).

■ In a pro se brief, appellant attacks the principal instruction on the grounds that it permitted a finding of guilt if the defendant acted in concert with another. Appellant contends that this was erroneous because the information made no reference to his acting with another. No such allegation was required in the information in order to permit the instruction. *State v. Scullin,* 185 Mo. 709, 84 S.W. 862 (1905).

Judgment affirmed.

All concur.