STATE of Missouri,
Plaintiff-Respondent,

v.

Leonard McClure BRADDOCK,
Defendant-Appellant.

No. 37988.

Missouri Court of Appeals,
St. Louis District,
Division Four.

Oct. 18, 1977.

J. Martin Hadican, Clayton, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Jeff W. Schaeperkoetter, Walter O.

Theiss, Asst. Attys. Gen., Jefferson City, George A. Peach, Circuit Atty., St. Louis, for plaintiff-respondent.

SIMEONE, Chief Judge.

This is an appeal by defendant-appellant, Leonard McClure Braddock, from a judgment of conviction entered by the Circuit Court of the City of St. Louis whereby the appellant, after being found guilty by a jury, was sentenced under the provisions of the Second Offender Act to twenty-two years in the Department of Corrections for the offense of robbery in the first degree. §§ 560.120, 556.280, RSMo. For reasons hereinafter stated, we affirm.

Since the appellant, Leonard McClure Braddock, does not raise the issue of the sufficiency of the evidence, only those facts necessary for the disposition of the points raised on appeal need be stated.

The jury could reasonably find the following salient facts. Sometime during the evening of October 14, 1974, Miss Alois Weems, who was acquainted with Paul Underwood and the appellant Leonard Braddock, borrowed an automobile owned by Eugene Hawkins. Miss Weems lived in the same apartment house with Paul Underwood. On the next day, October 15, 1974, she went to the house of Paul Underwood's mother some blocks away and she and Paul tried to locate Leonard Braddock. They found Leonard walking on Maryland Avenue in the City of St. Louis. The three then drove around and entered into a discussion. "It was stated that [there] was a service station down there [corner of Broadway and Chouteau] and that it was two young boys working there and that they were going to rob them because they didn't think they had any guns." According to Miss Weems, who was arrested and charged with robbery and whose cause was later nolle prosequied, Paul and Leonard stated that "[t]hey were going to rob the service station." Before reaching the service station owned by Robert Riegel and known as the Texas Discount Service Station, the three stopped at Paul Underwood's mother's house and ". . . Paul went inside to get two caps." They then went to Leonard Braddock's mother's house somewhere in the vicinity of Maryland Avenue and the two men went in and came out with two jackets and ladies' nylon stockings. Miss Weems could not remember which of the two brought up the subject of committing a robbery.

When the trio reached the vicinity of Broadway and Chouteau they ". . . drove past the service station down the street and drove behind—parked behind a trailer." They parked on Papin Street about a block from the service station. Miss Weems remained in the automobile. The two men took with them the "[t]wo jackets and two caps and [nylon] stockings." They walked towards the service station while Miss Weems remained in the automobile. Some few minutes later "[t]hey were running back towards the car."

At the service station that evening at about 8:00 p. m. two young service station attendants were on duty—Timothy J. Curran, age twenty, and Terry Carron, age eighteen. Shortly before 8:00 p. m., while they were checking out the day's earnings and Curran was "dropping money down the safe," two men came into the station. One had a gun and the other stood by the door on the inside. They both had stocking masks. The one with the gun demanded money—" 'Give me all of it' "—while the second man kept saying " 'Hurry,' 'Come,' 'Hurry,' 'Let's go.' " Carron gave the man the money—approximately eight-seven dollars and eighty-eight cents. The men were in the station about two or three minutes. ". . . [T]hey [then] ran out the front door and they proceeded to run up Papin Street." The two service station attendants could not positively identify the two men, but after the robbery identified Paul Underwood as the man with the gun from the clothing he was wearing and the mask around his neck.

While the alleged robbery was taking place, Mr. Nicholas P. Vitale, a private pa-

trolman for the St. Louis Terminal Railroad Police, ". . . just looked over and noticed the two attendants were standing in front of the window with their arms in the air and I seen the two subjects and I just had a funny feeling something was wrong . . . they ran out, they just ran out of the station and . . . I went after them. I chased them up Papin Street." The two men jumped in the parked car and when Vitale got there they ". . . got out of the car and ran and I looked in the vehicle and the girl [Weems] was still sitting there. She was laying down in the front seat of the car." The officer told her to stay there. Meanwhile the two service station attendants came and Vitale told them to call the police. One already had. Within a short time police officers Paul Behrman and Clyde McCandless came upon the scene. Miss Weems told McCandless that ". . . Braddock and Underwood were the ones that did it . . ." The officers found in the parked vehicle a billfold belonging to Braddock which contained his driver's license. Soon after the robbery the officers found Paul Underwood on a nearby lot ". . . in a truck that was on this lot, down on the floorboard of the truck."

Appellant-Braddock was arrested later in the day after officers spoke to Miss Weems and after they found his wallet in the vehicle. According to Officer Behrman, Brad-

dock was identified by the two attendants as one of the robbers by the clothing he wore. After Officer Paul Behrman had an arrest order for Braddock issued, he was arrested and taken to the Seventh District Station. Officer Eugene Baerman transported Braddock to the Fourth District. After being warned of his rights Braddock said, " 'Who snitched on me, Underwood?' "

According to Officer McCandless and the testimony of Miss Weems, she gave a statement to the officer which clearly implicated Braddock and Underwood in the robbery.

Based upon the above facts the appellant was charged on June 19, 1975 in a substitute information with a prior conviction and with robbery *by means of a dangerous and deadly weapon* in that he did rob, steal, take and carry away money belonging to Bob Riegel of the Texas Discount Service Station which was in the custody of Terry Carron. Nothing in the information charged Braddock with acting in concert with another.

The trial was held and the above facts were elicited. The court, among other instructions, gave Instruction No. 6[1] which told the jury that all persons who act together with a common purpose are guilty. The court also gave Instruction No. 7[2] which told the jury, inter alia, that it should find defendant guilty of robbery in the first degree if he intentionally aided or encour-

---

1. *INSTRUCTION NO. 6.* "All persons are guilty who knowingly act together with the common purpose of committing an offense, or who knowingly and intentionally aid or encourage another in committing it, and whatever one does in furtherance of *the offense is the act of each of them.*

"The presence of a person at or near the scene of an offense at the time it was committed is alone not sufficient to make him responsible therefor, although his presence may be considered together with all of the evidence in determining his guilt or innocence."

2. *INSTRUCTION NO. 7.* "If you find and believe from the evidence *beyond a reasonable doubt:*

First, that on October 15, 1974, in the City of St. Louis, State of Missouri, Bob Regal [sic], doing business as the Texas Discount Service Station, had possession of a quantity of mon-

ey, lawful currency of the United States, in the care and custody of Terry Carron, and Second, that at that time and place the defendant took the property from Terry Carron by causing him to fear immediate injury to his person, *and*

Third, that the defendant took the property with the intent to permanently deprive Bob Regal, doing business as the Texas Discount Service Station, of the property and to convert it or any part of it to the use of the defendant and others, and

Fourth, that *the defendant knowingly and* intentionally aided or encouraged the persons who engaged in the conduct submitted in the above paragraphs,

then you will find the defendant guilty of robbery in the first degree."

aged the persons who engaged in the conduct of taking property from Terry Carron by causing him to fear immediate injury.

The jury found appellant guilty of robbery in the first degree. The forms submitted to the jury had the words that the defendant was charged with robbery in the first degree by means of a dangerous and deadly weapon, but the jury found the defendant guilty of robbery in the first degree as submitted to it in Instruction No. 7.

After a motion for new trial was overruled and allocution granted, the trial court, under the provisions of the Second Offender Act, sentenced the appellant to twenty-two years in the Department of Corrections. In proper time the defendant perfected his appeal to this court.

On this appeal the appellant makes three points. He contends, first, that the trial court erred in giving Instruction No. 7, the verdict director, because the instruction resulted in his being convicted for an offense for which he was not charged (robbery in the first degree). He contends that Instruction No. 7 allowed the jury to find him guilty of robbery in the first degree (a) although he was charged in the information with robbery in the first degree by means of a dangerous and deadly weapon under § 560.135, RSMo. and (b) although he was charged that he acted alone in committing the robbery. Second, he contends that the court erred in giving Instruction No. 6 because the instruction permitted the jury to find him guilty if he acted with others with the common purpose of committing the offense or aided and encouraged another in committing the offense when the substitute information charged him with acting alone and not with others. Third, he contends that the verdict returned by the jury was defective because it was inconsistent since the verdict form used by the jury was styled "robbery in the first degree by means of a dangerous and deadly weapon"

but the jury returned a verdict on the same form of " 'guilty of robbery in the first degree as submitted in Instruction 7' " which did not refer in any way to a dangerous and deadly weapon.

After due consideration of the appellant's points and arguments we are convinced that the judgment of conviction must be affirmed.

■ First, in *Keeny v. State,* 461 S.W.2d 731, 732 (Mo.1971) it is stated that "[a]n accused charged with robbery in the first degree by means of a dangerous and deadly weapon may be convicted of robbery in the first degree. . . ."[3] Robbery in the first degree comprehends an act committed with or without a dangerous and deadly weapon. Robbery by means of a dangerous and deadly weapon merely goes to the penalty[4] so that the reference to the element of robbery in the first degree by means of a dangerous and deadly weapon in the substitute information may be treated as surplusage and may properly be disregarded. *Keeny v. State,* 461 S.W.2d at 733. There is no violation of Article I, Sections 17 and 18 of the Constitution of Missouri.

■ Secondly, Instruction No. 6 was not error. It complied in all respects to MAI–CR 2.10 and stated the law accurately relating to persons who participate in a criminal offense. See *State v. Jackson,* 519 S.W.2d 551, 556 (Mo.App.1975). Furthermore, it has been authoritatively held that an instruction permitting a finding of guilt if the defendant acted with another is not erroneous although the information made no reference to the defendant acting with another. "No such allegation was required in the information in order to permit the instruction." *State v. Martin,* 525 S.W.2d 804, 811 (Mo.App.1975), relying on *State v. Scullin,* 185 Mo. 709, 84 S.W. 862 (1905). See also *Latham v. United States,* 407 F.2d 1, 4 (8th Cir. 1969) and cases cited therein.

---

**3.** The Supreme Court relied upon *State v. Garrett,* 435 S.W.2d 662, 666 (Mo.1968) and *State v. Salisbury,* 43 S.W.2d 1021, 1024 (Mo.1931).

**4.** *State v. Pope,* 364 S.W.2d 564, 568 (Mo.1963).

Thirdly, the verdict returned by the jury was not defective because the style on the form indicated that the defendant was charged with robbery in the first degree by means of a dangerous and deadly weapon when the jury returned a verdict of guilty of robbery in the first degree "as submitted in Instruction No. 7."

The jury was instructed on the precise crime for which the appellant was convicted. The words to which the appellant objects merely point to the information and the charge not to the facts as developed at trial and the instructions given by the court. The verdict was consistent with Instruction No. 7 and consistent with the rule that a defendant may be convicted of robbery in the first degree although charged with robbery in the first degree by means of a dangerous and deadly weapon.

We have read the entire transcript; we have read the briefs of the parties and the authorities therein. We are convinced that there is no prejudical error; hence, we affirm the judgment of conviction.

The judgment is affirmed.

NORWIN D. HOUSER and ALDEN A. STOCKARD, Special Judges, concur.