STATE of Missouri, Respondent,

v.

Dennis Lee MORGAN, Appellant.

No. 61504.

Supreme Court of Missouri,
En Banc.

Jan. 15, 1980.
Rehearing Denied Feb. 11, 1980.

Cynthia S. Holmes, Sp. Asst. Public Defender, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Steve Garrett, Asst. Atty. Gen., Jefferson City, for respondent.

MORGAN, Judge.

Appellant was convicted in one trial of stealing over $50 and second degree (felony) murder. The victim was killed when the car in which she was a passenger was struck by a car driven by appellant, who was seeking to elude police in a high-speed chase. The stealing had occurred earlier when appellant pulled into a gasoline station and engaged the attendant in conversation about the car while a companion, never seen by the attendant, entered the storage room of the station and stole some cigarettes, a check protector and some quarters.

The Court of Appeals, Eastern District, affirmed appellant's convictions,[1] after which this Court granted transfer and now decides the case as an original appeal.

Seven claims of error are lodged here. Appellant contends that the trial court erred in (1) denying his motion to dismiss on the ground that the two counts in the substitute information subjected him to double jeopardy; (2) denying his motions for acquittal because there was insufficient evidence of stealing; (3) limiting defense counsel's cross-examination of one of the police officers; (4) denying his motion to suppress evidence seized without a warrant at the scene of the wreck; (5) submitting a verdict-directing instruction that varied from the substitute information; (6) failing to give in full MAI–CR 2.70 as required, and (7) overruling defense objections to testimony by the station attendant as to the value of cigarettes stolen and failing to declare a mistrial after sustaining defense counsel's motion to strike testimony as to the value of the check protector, thus prejudicing appellant's right to a fair trial.

The state's evidence established the following: On December 4, 1975, a man identified by the station attendant as appellant drove into the Clark Service Station on South Grand in St. Louis and asked the attendant to check the oil. The attendant described the car as a black over white Cadillac, although his testimony varied on whether it was a two-door or four-door car and he did not know the model of the car. When the attendant told appellant that the oil was fine, appellant then asked the attendant to listen for a knocking noise in the engine. The attendant estimated that the encounter lasted between five and ten minutes. He testified that during that time appellant never got out of the car and that he saw no one else in the car or around the station. When the attendant returned to the station building after appellant had left, he saw that the door to the storage room was open, a bag of cigarettes lay open and some loose change was on the floor. The attendant then called the police. One of the policemen involved in the chase testified that he and his partner were out on routine patrol and began following the Cadillac appellant was driving after a call came over their radio on a holdup at the Clark station. The call included a description, although what the description was is unknown. Very soon after the call, the officer and his partner observed the Cadillac approaching with two persons inside. The driver was a black male, and as the police passed, one officer testified that the driver put his hand up to his face so as to obstruct their view of him, while the passenger in the Cadillac appeared to be doing something down on the seat. After following the Cadillac about half a block, another call came out over the police radio with a description of the automobile and its occupants. At that time the policemen accelerated and turned on the red roof lights and siren. The Cadillac also accelerated at this point, and the chase ending in the fatal crash ensued. After the crash and while the appellant and

1. Although this Court reaches a different conclusion as to the double jeopardy issue presented here and in the court of appeals, it concurs in the results reached by Snyder, J. as to the other issues involved and adopts his reasoning without use of quotation marks in several parts of this opinion.

his companion were subdued, the front seat of the car was searched for weapons. None was found. At some point after ambulances and other police cars had arrived, one of the officers had a radio conversation with the attendant or manager of the service station and told him he had found a carton of cigarettes in the car. The attendant or manager told him more cartons had been stolen. The officer returned to the Cadillac and opened its trunk by means of a remote switch in the glovebox. There he found thirteen cartons of cigarettes and a check protector. Fingerprints on one carton and the check protector were identified later as belonging to appellant. Apparently, appellant was in the ambulance at the time of the trunk's search.

The complexity of the first issue presented, double jeopardy, requires a detailed analysis of this case vis-à-vis Missouri and United States Supreme Court cases on this issue. Appellant relies primarily on *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977) to support his claim of double jeopardy here. A superficial comparison of this case and *Harris* yields the conclusion that the two cases are distinguishable. In *Harris* a grocery store clerk was shot and killed by a companion of Harris in the course of a robbery. Harris was convicted of robbery under an Oklahoma statute. Thereafter Harris was brought to trial and convicted on a separate information charging felony-murder also under an Oklahoma statute.[2] His motion to dismiss on the ground that this prosecution violated the Double Jeopardy Clause of the fifth amendment was denied. The United States Supreme Court reversed, saying, "When, as here, conviction of a greater crime, murder, cannot be had without conviction of the lesser crime, robbery with firearms, the Double Jeopardy Clause bars prosecution for the lesser crime after conviction of the greater crime." In a footnote to this sentence the court said the state had conceded that in the murder case it was necessary for all the ingredients of the underlying felony of robbery with firearms to be proved. The distinction between *Harris* and the instant case is that in *Harris* there were two trials and in this case there was one. This cannot be the end of the analysis, however, for several reasons.

The fifth amendment to the United States Constitution states in pertinent part: ". . . nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; . . . ." U.S. Const. amend. V.[3] The United States Supreme Court has construed this language to refer to the dangers of multiple prosecution and multiple punishment for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). That court also has addressed the question of what constitutes the same offense for constitutional purposes. Although application of the test developed in this regard has

---

2. Although the opinion in *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977), relates that Harris first was convicted of felony murder, then tried and convicted of robbery, the underlying cases in the Oklahoma state courts indicate that the opposite was true. *See, Harris v. State*, 558 P.2d 1199 (Okl.Cr. 1977) and *Harris v. Oklahoma*, 439 U.S. 970, 99 S.Ct. 465, 58 L.Ed.2d 431 (dissenting opinion by Brennan, J.) (1978).

In either event, *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), had made clear that the order of prosecution was of no significance in a double jeopardy situation.

3. Appellant here also claims entitlement to relief under the double jeopardy provision in the Missouri Constitution. Mo.Const. art. I, § 19

declares that the state is prohibited from placing a person "again in jeopardy of life or liberty for the same offense, after being once acquitted by a jury." The circumstances of this case obviously do not fall within this proscription. It has been said, however, that "there is no readily discernible difference between the Fifth Amendment guarantee against double jeopardy, enforceable against the states through the Fourteenth Amendment, and the common law guarantee [against a defendant being placed twice in jeopardy] as applied in this State. *State v. Richardson*, 460 S.W.2d 537, 538 (Mo. banc 1970)." *State v. Treadway*, 558 S.W.2d 646, 651 (Mo.banc 1977), *cert. denied*, 439 U.S. 838, 99 S.Ct. 124, 58 L.Ed.2d 135 (1978).

been checkered, *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) still is the leading case. The defendant there was charged with violating provisions of the Harrison Narcotic Act. Of the five counts charged, defendant was convicted in one trial of three counts. Two of those three, he claimed, constituted but one offense for which only a single penalty lawfully could be imposed. One of those counts charged a sale of morphine hydrochloride not in or from the original stamped package, and the other charged that sale as also having been made not in pursuance of a written order of the purchaser as required by the statute. In finding two offenses, the court stated the following:

> The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not.
>
> . . .

*Id.* at 304, 52 S.Ct. at 182.

The test was reaffirmed in *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), which held that it applied to successive prosecutions as well as to the imposition of cumulative punishment at a single trial. The court there noted that the *Blockburger* test is not the only standard for determining whether successive prosecutions impermissibly involve the same offense but said, "Because we conclude today that a lesser included and a greater offense are the same under *Blockburger*, we need not decide whether the repetition of proof required by the successive prosecutions against Brown would otherwise entitle him to . . . additional protection . . ." *Id.* at 167, n. 6, 97 S.Ct. at 2226.

Thirteen days after the court handed down *Brown v. Ohio*, another decision was rendered on greater and lesser included offenses. That case was *Harris v. Oklahoma, supra.*

The issue addressed in *Harris* has been before this Court as well. The case urged as controlling here is *State v. Chambers*, 524 S.W.2d 826 (Mo.banc 1975), *cert. denied*, 423 U.S. 1058, 96 S.Ct. 794, 46 L.Ed.2d 649 (1976), decided before *Harris*. There defendant and a companion, after a four-hour drinking bout, stole a pickup and towed it behind a car. The vehicles weaved through both lanes of the highway and collided with an oncoming automobile, killing four persons. Chambers was convicted in one trial of one count of stealing and four counts of murder, second degree. In his appeal to this Court, Chambers challenged the submission of both the underlying felony and the murders, claiming conviction for both crimes would violate the doctrine of double jeopardy. This Court said in that regard:

> The question is now restated, whether, in the circumstances of this case, the stealing charge is an essential element of, or lesser included offense within, the felony-murders as to bring the case within the prohibition of *State v. Toombs*, [326 Mo. 981, 34 S.W.2d 61 (1930)].
>
> The felony-murder rule permits the felonious intent necessary to a murder conviction to be shown by the perpetration of or attempt to perpetrate a felony. Proof of intent to commit the underlying felony raises a conclusive presumption that the defendant possessed the necessary felonious intent to support conviction for the resulting murder . . . . . The rule does not make the underlying felony an element of the felony-murder; it merely provides an additional means of proving the requisite felonious intent for murder. (citations omitted)

*Id.* at 829.

The Court concluded that the two offenses "are not merged, but are separate and distinct in law and in fact."

The Court of Criminal Appeals of Oklahoma echoed these statements in *Harris v. State*, 555 P.2d 76 (1976), *rev'd per curiam sub nom. Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977). The Oklahoma court had said:

> In the case at bar the two offenses complained of, felony murder, and rob-

bery with firearms, are separate and distinct . . .

In a felony murder case, the proof of the underlying felony is needed to prove the intent necessary for a felony murder conviction . . .

555 P.2d at 80, 81.

This language did not go unnoticed by the United States Supreme Court in its subsequent opinion and, in fact, was quoted specifically in that per curiam. 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054.

It is clear that after *Harris*, the underlying felony is a lesser included offense of felony murder. Respondent here contends that the Supreme Court in *Harris* meant only to address those states such as Oklahoma, whose felony murder laws require proof of the underlying felony as an *element* of felony murder. No support can be found for this claim.

The law under which Harris was convicted read:

Homicide is murder in the following cases . . .

3. When perpetrated without any design to effect death by a person engaged in the commission of any felony. Okla. Stat. tit. 21, § 701 (1971), repealed Laws 1973, c. 167 § 7, emergency eff. 5–17–73.

Missouri's statute at the time of appellant's arrest read:

559.007. First degree murder defined. —The unlawful killing of a human being when committed without a premeditated intent to cause the death of a particular individual but when committed in the perpetration of or in the attempt to perpetrate arson, rape, robbery, burglary, or kidnapping is murder in the first degree.

559.020. Murder in the second degree. —All other kinds of murder at common law, not herein declared to be manslaughter or justifiable or excusable homicide, shall be deemed murder in the second degree.

RSMo 1969 (Supp.1975).

Appellant was charged under the latter statute, under the theory resurrected in *State v. Jasper*, 486 S.W.2d 268, 271 (Mo. banc 1972):

It is thus clear that Missouri recognizes the common law felony-murder rule under which a homicide committed in connection with a felony other than those enumerated in § 559.010 [Repealed L.1975 H.B. 150 § A, § 559.007 above substituted in its place] is murder in the second degree, absent other evidence from which the jury could find the elements necessary to a finding of murder in the first degree.

A reading of the Oklahoma statute may lead one to the conclusion that it makes the underlying felony an element of felony murder. The Oklahoma Court of Criminal Appeals, however, did not view it in that manner, and the United States Supreme Court did not single out the Oklahoma statute for containing the underlying felony as an element. Rather it spoke of the use of the underlying felony to prove the intent necessary. If the Supreme Court meant to create a distinction between Oklahoma and other states on the basis of the wording of its murder statutes, it gave no hint of that in *Harris*.

This being the case, *Chambers* is infirm at least to the extent that it holds that a defendant may be convicted and punished for felony murder and the underlying offense, whether in one trial or two.

The second aspect of this double jeopardy question is whether *Harris* is distinguishable from this case because it involved two separate prosecutions rather than one in which the two charges were joined.

When *North Carolina v. Pearce, supra*, declared that the fifth amendment guarantee protected against three separate constitutional protections, including multiple punishment for the same offense, it was merely restating the law as it had existed since at least 1874. The court in *Pearce* quoted from *Ex Parte Lange*, 18 Wall. 163, 168, 21 L.Ed. 872:

If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offence. And . . there has never been any doubt of [this rule's] entire and complete protection of the party when a second punishment is proposed in the same court, on the same facts, for the same statutory offence.

Although some advocates might seek to limit *Lange* and *Pearce* to their facts, other cases reveal that such a limitation would be unwarranted. Those double jeopardy cases which do not involve multiple prosecution or collateral estoppel must necessarily be addressing the problem of multiple punishment. *Blockburger* is an example of such a case. The two drug statutes there were determined not to be the "same," *i. e.*, that two offenses were committed even though there was only one sale. Although the court gave no indication there as to what the result would have been had the statutes been the "same" it is at the very least reasonable to assume that had they been found to be the same, that finding would have had some significance. After all, if it wasn't potentially a violation of double jeopardy to punish twice in one proceeding for the "same" offense, what could have been the purpose of determining whether the offenses were indeed the same? It is argued that the *Blockburger* test is to be used only to determine if *Congress* or a legislature intended that there be separate crimes. The most obvious problem with this contention is its implication that a lawmaking body can determine the scope of the double jeopardy clause. But beyond that flaw, there exist subsequent cases which lend no support to the theory that *Blockburger* is merely a rule of statutory construction.

For example, in *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977), the court said:

. . . the Fifth Amendment double jeopardy guarantee serves principally as a restraint on courts and prosecutors.

The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments; but once the legislature has acted, the courts may not impose more than one punishment for the same offense and prosecutors ordinarily may not attempt to secure that punishment in more than one trial.

In *Jeffers v. United States*, 432 U.S. 137, 155, 97 S.Ct. 2207, 2218, 53 L.Ed.2d 168 (1977), the court said:

The critical inquiry is whether Congress intended to punish each statutory violation separately. [citations omitted] . . . *If some possibility exists that the two statutory offenses are the "same offense" for double jeopardy purposes, however, it is necessary to examine the problem closely, in order to avoid constitutional multiple-punishment difficulties.* . . .

As petitioner concedes . . . the first issue to be considered is whether Congress intended to allow cumulative punishment for violations of [these enumerated offenses.] *We have concluded that it did not, and this again makes it unnecessary to reach the lesser-included-offense issue.*

(Emphasis added.)

Less than a year after *Jeffers,* the court in *Simpson v. United States*, 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978), said:

Cases in which the Government is able to prove violations of two separate criminal statutes with precisely the same factual showing, as here, raise the prospect of double jeopardy and the possible need to evaluate the statutes in light of the *Blockburger* test. That test, the Government argues, is satisfied in these cases. We need not reach the issue. Before an examination is made to determine whether cumulative punishments for the two offenses are constitutionally permissible, it is necessary, following our practice of avoiding constitutional decisions where possible, to determine whether Congress intended to subject the defendant to mul-

tiple penalties for the single criminal transaction in which he engaged.

*Id.* at 11, 12, 98 S.Ct. at 912.

These cases clearly imply that the determination of legislative intent is an exercise independent of the *Blockburger* test, and therefore that test is not a rule of statutory construction.

These cases also suggest an alternate path this Court could follow in resolving the double jeopardy issue in this case, that is, to determine the legislative intent. Because the theory of murder in this case is based in the common law, however, and not in statutory language, such an excursion would arrive at a dead end.

Missouri's decisions on double jeopardy follow those United States cases in which multiple punishment, rather than successive prosecutions, was the issue. Two cases handed down the same day by this Court, one in division and one en banc, are in point.

In *State v. Neal,* 514 S.W.2d 544 (Mo. banc 1974), defendant was convicted in one proceeding of first-degree robbery by means of a dangerous and deadly weapon and assault with intent to kill with malice aforethought. The robbery alleged had occurred at a hardware store, and there were two counts of assault on two persons. After affirming the robbery conviction, the Court said at 548:

> First, the robbery in this case of Cordes Hardware by taking money from the custody of Johnnie Walton, Count I, was the result of the assault committed upon Johnnie Walton and it was the identical assault. also charged in Count III. To. thus split the single crime of robbery and prosecute it in Count I and a second time in Count III as an assault violated the rule against double jeopardy. *State v.*

*Richardson,* 460 S.W.2d 537 (Mo. banc 1970).

In *State v. Parsons,* 513 S.W.2d 430 (Mo. 1974), two counts of murder were lodged against defendant, first-degree murder by inflicting a mortal wound with an explosive device and causing an explosive device to be exploded whereby the same victim was put in danger of death. The Court found there was only one crime, despite the existence of two distinct statutes, and that conviction on both in the same proceeding violated the double jeopardy protection against multiple punishment for the same offense.

■ It is therefore clear that under *Blockburger* as applied in *Harris,* the felony relied on to prove intent in a felony-murder case is a lesser-included offense of the murder. Here stealing was a lesser-included offense of second-degree murder. That there should be more protection for a defendant who is doubly prosecuted than one who is doubly punished for the same offense is not supported by the cases from the United States or Missouri Supreme Court. A majority of other jurisdictions confronting this double jeopardy issue in the one-proceeding circumstance have ruled as this Court does today on the question. *See, State v. Pinder,* 375 So.2d 836, 838 (Fla. 1979); *Tyson v. State,* Ind., 386 N.E.2d 1185, 1193 (1979); *Mitchell v. State,* Ind., 382 N.E.2d 932, 934 (1978); *State v. Frye,* 283 Md. 709, 393 A.2d 1372, 1375 (1978); *State v. Innis,* R.I., 391 A.2d 1158, 1165 (1978), *cert. granted on another issue,* 440 U.S. 934, 99 S.Ct. 1277, 59 L.Ed.2d 492 (1979); *State v. Briggs,* Tenn., 573 S.W.2d 157, 159 (1978). *See also, United States v. Larkin,* 605 F.2d 1360 (5th Cir. 1979) and *Harrison v. Commonwealth,* 257 S.E.2d 777 (Va.1979).[4]

One last question to be considered in this regard is the effect of concurrent sentences

4. In this Virginia case, defendant was tried in a single bench proceeding on separate indictments for capital murder in the commission of armed robbery and for robbery. The court . there found no double jeopardy violation, reasoning that, unlike in *Harris* proof of the intent

necessary for the defendant's murder conviction was supplied by the independent showing that the killing was willful, deliberate and premeditated. . Thus it was not a case where "conviction of a greater crime, murder, cannot be had without conviction of the lesser crime [the

imposed here. The state urges this Court to exercise its discretion and refuse to review any claim concerning double jeopardy by reason of the concurrent sentence doctrine.

In *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), the court explained the role of the doctrine at 789–90, 89 S.Ct. at:

> One can search through these cases, and related ones, without finding any satisfactory explanation for the concurrent sentence doctrine. [citation omitted] But whatever the underlying justifications for the doctrine, it seems clear to us that it cannot be taken to state a jurisdictional rule. [citations omitted] Moreover, whatever may have been the approach in the past, our recent decisions on the question of mootness make it perfectly clear that the existence of concurrent sentences does not remove the elements necessary to create a justiciable case or controversy.

The court concluded by noting the adverse collateral legal consequences of a conviction, saying:

> The concurrent sentence rule may have some continuing validity as a rule of judicial convenience. This is not a subject we must canvass today, however. It is sufficient for present purposes to hold that there is no jurisdictional bar to consideration of challenges to multiple convictions even though concurrent sentences were imposed.

*Id.* at 791, 89 S.Ct. at 2061.

The two collateral consequences mentioned in *Benton* pertain in this case as well, *i. e.,* use of all prior felony convictions for the purpose of enhancing sentence under habitual criminal statutes [5] and for the purpose of impeaching his character if put in issue in a future trial. Nothing present-

ed by the state and nothing discovered independently about this case compels this Court to invoke its discretion in this matter.

Appellant also contests the sufficiency of the evidence to sustain submission of the stealing charge to the jury. Before reaching this question, the admissibility of evidence seized from the trunk of the car after the crash must be determined.

■ Testimony at trial indicated that appellant and his companion were placed under arrest as soon as they were removed from their car after the crash. The evidence contested at trial was not seized until after the arrests. Although the validity of the arrests is not attacked directly in this case, their validity is of no moment here because of the rule from *State v. Edmonds,* 462 S.W.2d 782, 784 (Mo.1971), restating *Chambers v. Maroney,* 399 U.S. 42, 51, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970):

> . . . The right to search [an automobile] and [the] validity of the seizure are not dependent upon the right to arrest but depend upon the existence of reasonable cause on the part of the seizing officer to believe that the contents of the automobile offend against the law.

*State v. Hornbeck,* 492 S.W.2d 802, 807 (Mo. 1973).

The Court in *Hornbeck* stated the definition of probable cause to be "more than mere suspicion . . . [existing] where the facts and circumstances within the knowledge of the seizing officers, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed or that the contents of the automobile offend against the law."

*Id.* at 805.

■■ At the time of the search the officers knew that upon their initial sighting of

---

underlying felony]." *Harris v. Oklahoma,* 433 U.S. at 682, 97 S.Ct. at 2913.

**5.** In the states of Texas and West Virginia, a life sentence is to be imposed upon conviction

for third felony. *See,* Tex.Penal Code Ann. tit. 3, § 12.42(d) (Vernon) and W.Va.Code § 61–11–18 (1977).

appellant and his companion, the two tried to cover their faces, that a robbery (later determined to be stealing) had been committed for which the police had issued a description over the police radio seeking two Negro males driving a white over black 1968 Cadillac, that the car that the police had been following before turning on the siren and lights matched the description issued, that the car matching the description accelerated rather than pulling over when the officers activated the siren and red lights, that during a several-block chase the Cadillac failed to stop at any stop sign or light and traveled at excessive speeds, that after the crash but before opening the trunk one of the officers noticed a carton of Kool cigarettes broken open in the seat and loose change lying on the floor and that prior to looking in the trunk one of the officers was in contact by radio with the station manager who advised that there should be more than one carton of cigarettes in the car.

These facts and circumstances meet the test set out in *Hornbeck* as to probable cause. And as stated in that case, given probable cause to search the automobile, the officers were permitted to carry out an immediate search without presenting the probable cause issue to a magistrate. *State v. Hornbeck,* 492 S.W.2d at 807, *Chambers v. Maroney,* 399 U.S. at 51, 90 S.Ct. 1975. Appellant's point is without merit.

As to the sufficiency of the evidence, appellant in his motion for new trial claimed that the state had failed to prove that he had caused the death of the car wreck victim, but on appeal says the state failed to prove that he was guilty of stealing items of a value over $50. Although the latter contention was not preserved properly for appeal, it will be reviewed under the plain error doctrine, Rule 27.20(c).

■ In determining the sufficiency of the evidence in a criminal case after the verdict of guilty, the Court accepts as true all evidence in the record tending to prove the defendant's guilt, whether such evidence is circumstantial in nature, together with favorable inferences that can be reasonably drawn therefrom and disregards all contrary evidence and inferences. *State v. Johnson,* 457 S.W.2d 795 (Mo.1970), *State v. Chase,* 444 S.W.2d 398 (Mo. banc 1969), citing also from *State v. Bayless,* 362 Mo. 109, 240 S.W.2d 114 (Mo.1951).

■ When the state's case rests upon circumstantial evidence, "the facts and circumstances must be consistent with each other and with the hypothesis of defendant's guilt, and they must be inconsistent with his innocence and exclude every reasonable hypothesis of his innocence." *State v. Franco,* 544 S.W.2d 533, 534 (Mo. banc 1976), citing from *State v. Ramsey,* 368 S.W.2d 413, 416 (Mo.1963).

The application of this circumstantial evidence rule is realistically tempered, however, such that the circumstances need not be absolutely conclusive of guilt or demonstrate impossibility of innocence. "[T]he mere existence of other possible hypothesis is not enough to remove the case from the jury." *State v. Thomas,* 452 S.W.2d 160, 162 (Mo.1970).

■ With these rules to guide the Court, it is clear that the evidence presented here was sufficient to support submission of the issue of appellant's guilt to the jury. As the court of appeals opinion written by Snyder, J., noted, appellant's presence at the station at the time of the theft, his actions at the station, his proximity to the scene when initially spotted by the police, his behavior when spotted, his subsequent flight, his unexplained possession of the exact property stolen only moments before his arrest and his fingerprints on the stolen goods created a chain of circumstances pointing to his guilt. Moreover, the testimony of the station owner established that the value of the cigarettes exceeded $50, without considering the value of the check protector or the loose change stolen. The trial court did not err in denying appellant's motions for acquittal.

Appellant also complains that his cross-examination of one of the police officer's present at the scene of the wreck was limited unjustifiably. Defense counsel inquired of the officer if he was aware that the victim's mother was contemplating a lawsuit against him. The prosecutor objected to the question and after a conference at the bench defense counsel indicated that he sought to get before the jury whether the officer had "a stake in the outcome" of the suit. The trial court instructed defense counsel that he would be permitted to ask "whether or not there has been any claim made against him personally, or any claims made against him personally arising out of that accident that took place on December 4, 1975. If he said, 'yes,' you may inquire as to what the claim is, and you cannot argue with him about it at all." The prosecutor's objection was sustained, and then in open court again, defense counsel asked the following:

Q Mr. Healey, has any claim been made against you personally arising out of this accident?

A Elaborate what you mean by claim, sir?

Q Certainly. Has anybody contacted you pertaining to this accident?

A Anybody?

Q Yeah. Virginia Stuckmeyer?

A She has not contacted me personally.

Q Has her attorney?

A No, sir.

Q Are you aware that a civil action is—

At this point the prosecutor objected to this question as going outside the court's ruling. The trial court permitted defense counsel to ask the question which it had authorized earlier. Defense counsel asked, "Are you aware that a claim is pending against you arising out of this accident?" The officer answered in the negative, and defense counsel asked no more questions of him.

Appellant's precise point in this regard is that the trial court erred "in preventing defense counsel from cross-examining Officer Healey as to his knowledge that the mother of the deceased, alleged victim, was considering filing a lawsuit against the officer arising out of the accident, as such questioning would have shown interest and bias of the witness, and therefore constituted proper cross-examination."

■ While permissible to attempt to show a witness's interest or bias and the extent thereof on cross-examination as bearing on the credit which should be accorded his testimony, the scope of the inquiry is within the discretion of the trial court. *State v. Pigques,* 310 S.W.2d 942, 947 (Mo.1958). In this instance defense counsel was permitted to ask the officer whether he had knowledge of a civil suit pending against him stemming from the death of the victim. The officer said he had no such knowledge, and questioning was ended by defense counsel. No abuse of discretion has been shown in this regard. Moreover, the limits placed on cross-examination by the trial court need not have frustrated defense counsel's effort to show bias, for once the witness denied knowledge of a suit, defense counsel was free to produce other witnesses or evidence showing the existence or pendency of such a suit. *See State v. Pigques, supra.*

■ Appellant next contends that the trial court erred in submitting a verdict director that was a fatal variance from the substitute information filed in lieu of indictment. The pertinent part of the information said that appellant "being then and there in the perpetration of the offense of Stealing Fifty Dollars or Over, did then and there propel his automobile, at, upon and against the body of Connie Duganich, thereby feloniously inflicting a mortal wound . . .." The challenged instruction included a paragraph alleging "that the defendant either acted alone or knowingly with common purpose together with another in the conduct referred to in the above paragraphs . . .."

This claim is governed by the rule announced in *State v. Scullin,* 185 Mo. 709, 84 S.W. 862 (1905). There a similar claim was lodged, to which the Court responded that

> "the fact that the instruction tells the jury that the defendant, acting alone or with others then and there present and acting with him, did not make it any broader than the information [which charged the defendant alone with the commission of the crime] . . . It is approved practice in criminal prosecutions, where two or more persons are engaged in the commission of crime, to prosecute them jointly or severally . . and where only one is prosecuted, it may be shown that others were present, participating in the criminal act, although not included in the indictment or information, and it is not thought that an instruction upon the same lines as in the case at bar is subject to the objection that it is broader than the information."

*Id.* 84 S.W. at 863.

*Accord: State v. Braddock,* 558 S.W.2d 776, 779 (Mo.App.1977); *State v. Martin,* 525 S.W.2d 804, 811 (Mo.App.1975). Appellant's claim in this regard is rejected.

A modification of MAI–CR 2.70 also comes under attack by appellant. The second paragraph of MAI–CR 2.70, which was deleted in this case, reads in pertinent part: "You may find the defendant guilty or not guilty on any or all of the counts submitted against him." The trial judge explained the modification in this way:

> The reason the court is eliminating that is under the law of this case, the jury could not logically follow that instruction because the jury cannot find him not guilty on Count I [stealing $50 or over] and guilty of Murder Second Degree on Count II. The court is not instructing the jury with respect to that because in the opinion of the court they can find him guilty on Count II for manslaughter, even though they don't find him guilty of stealing under Count I, which seems in the court's opinion to create some kind of

hiatus with respect to Instruction 2.70, which is mandatory under MAI. The court is directing the circuit attorney in his argument to explain to the jury that if they find the defendant guilty of Murder Second Degree on Count II, they must first find him guilty of Stealing under Count I.

Rule 20.02(e) provides that failure to give a required instruction, as is MAI–CR 2.70, "shall constitute error, its prejudicial effect to be judicially determined." This case is not one in which the court failed to give a mandatory instruction; instead, it failed to give the *entire* instruction as set out in MAI–CR. Assuming, however, that such an omission is error, it is for this Court to determine its prejudicial effect, as well.

*State v. Arrington,* 559 S.W.2d 749 (Mo. banc 1978), is the most recent case from this Court on the prejudicial effect of omitting 2.70 in its entirety. In reviewing under the plain error rule [27.20(c)], the Court found no prejudice, saying:

> Upon reading all of the instructions, taken together, it is clear that the jury knew that it could find appellant guilty or not guilty on either or both counts. [citation]. Separate verdict directing instructions were given on robbery in the first degree, murder in the first and second degrees and manslaughter. Each carried a tail directing acquittal if all elements were not found beyond a reasonable doubt. Further, the jury was given six verdict forms, two of which entitled the jury to find the appellant not guilty of the robbery or the homicide, plus three more verdict directing forms which allowed the jury to find appellant guilty of an offense without assessing punishment. Thereby, the jury was given every opportunity to find appellant guilty or not guilty of each offense.

*Id.* at 750.

The Court went on to cite *State v. Boyington,* 544 S.W.2d 300 (Mo.App.1976) to the effect that the purpose of MAI–CR 2.70, as stated in the notes on use as being that

separate consideration be given to each offense, had been accomplished "beyond possibility of doubt and there could be no prejudice to defendant." *Id.* at 304.

■ The considerations noted in *Arrington* had been set out earlier in *State v. Minor,* 556 S.W.2d 35 (Mo. banc 1977), another case in which no prejudice was found by the omission of MAI–CR 2.70. In the present case, separate verdict directors for robbery, murder second degree and manslaughter were given, each with a tail directing acquittal if the jury did not believe every submitted element. Five verdict forms referencing the counts and crimes were given. MAI–CR 3.02 also was given, informing the jury that they could not find appellant guilty of murder in the second degree unless they also found him guilty of stealing. The instructions, viewed in their entirety, clearly mandated separate consideration of every charge. Moreover, the inclusion of the manslaughter instruction precluded the possibility that the jury would convict on the stealing charge only because they believed appellant was in some way responsible for the death of the victim but not guilty of the stealing. The omission of paragraph two of MAI–CR 2.70 in this case did not prejudice appellant.

■ In his last point, appellant claims error in the overruling of objections to testimony on direct examination by the service station attendant as to the value of the cigarettes. He admitted on cross-examination that he did not order or pay for the items. The value at issue was established at greater than $50 by the testimony of the owner of the station that he had paid $4.20 a carton. Therefore, any possible error in admitting the attendant's testimony was harmless.

■ Within this last point, appellant also contends that the trial court erred in refusing to declare a mistrial after sustaining his motion to strike the testimony of the station owner on the value of the check protector stolen. The owner admitted after giving a variety of estimates that he did not know the value. The trial court granted appellant's motion to strike the testimony and his request that the jury be instructed to disregard the testimony.

Mistrial, regarded as a drastic remedy, is to be granted only with greatest caution and in extraordinary circumstances. The propriety of using the remedy is lodged securely in the discretion of the trial court. No abuse of discretion was shown here, especially in light of the fact the other evidence established the requisite value for the felony stealing charge.

Inasmuch as the convictions and sentences for the greater offense of felony murder and the lesser included offense of the felony, stealing, violate the fifth amendment proscription against double jeopardy, the judgments are vacated and the cause is remanded to the trial court with directions to enter a new judgment and sentence consistent with the views expressed herein.[6]

BARDGETT, C. J., and SEILER, WELLIVER and HIGGINS, JJ., concur.

DONNELLY, J., dissents in separate dissenting opinion filed.

RENDLEN, J., dissents.

DONNELLY, Judge, dissenting.

The principal opinion treats the *Per Curiam* in *Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977) as decisive here.

In my view, we are not bound by general declarations of law made by the United States Supreme Court. *See State v. Clark,* 592 S.W.2d 709 (Mo. banc 1979) (Donnelly, J., dissenting) (1979).

Of course, in a given factual setting, when the United States Supreme Court

---

6. The Committee on Pattern Criminal Charges and Instructions is requested hereby to review the applicable instructions in light of the views set forth in this opinion.

takes jurisdiction over the subject matter and the parties, its adjudication is the law of the case and its judgment is binding on this Court. But this is not the situation here.

I respectfully dissent.